IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:18-cr-00401-AA-3 |
| Plaintiff, | **OPINION AND ORDER** |
| vs. | |
| GONZALO MANZO, Jr., | |
| Defendant. | |

AIKEN, District Judge:

Before the Court is defendant Gonzalo Manzo, Jr.'s Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 182. For the following reasons, the Motion is DENIED.

## STANDARDS

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release under § 3582(c)(1)(A) provides an exception in rare cases. With the passage of the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), Congress authorized courts to modify a defendant's

Page 1 – OPINION AND ORDER

sentence on a motion for compassionate release by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that two conditions are met: (1) that "[e]xtraordinary and compelling reasons warrant such a reduction" and (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In making that determination, courts must "consider[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable[.]" 18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement is found in the United States Sentencing Guidelines, § 1B1.13. The policy statement identifies four categories of extraordinary and compelling reasons: (A) the medical condition of the defendant, including "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" (B) the age of the defendant; (C) family circumstances; and (D) extraordinary and compelling reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. 1(A)–(D).[1] The policy statement also requires the court to find that the

---

[1] Although the policy statement limits the fourth category to other reasons "[a]s determined by the Director of the Bureau of Prisons," the Court follows the majority of federal courts that "have found that the most natural reading of the amended § 3582(c) and 28 U.S.C. § 994(t) is that the district assumes the same discretion as the BOP director when it considers a compassionate release motion

Page 2 – OPINION AND ORDER

defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).

## DISCUSSION

On August 29, 2017, defendant was arrested after he was recorded negotiating with undercover ATF agents to exchange one kilogram of cocaine for several guns, including multiple silencers and a machine gun. Under 18 U.S.C. § 924(c)(1)(B)(ii), trading a machine gun or silencer for drugs carries a mandatory minimum of 30-years imprisonment. Defendant, however, entered into a plea agreement and plead guilty to two counts, one for conspiring to distribute and possessing with intent to distribute cocaine, and one count of possessing firearms in furtherance of a drug trafficking crime. The parties jointly recommended 188 months' imprisonment, and this Court imposed that sentence on December 11, 2018. Defendant is currently serving his sentence at FCI Big Spring in Texas and has served, with good time credits, about 45 months (about 24%) of his imposed sentence. His projected release date is January 1, 2031. On February 25, 2021, defendant filed a motion asking the Court to reduce his sentence, and a hearing was held on March 15, 2021.

Defendant also submitted a request for compassionate release to the warden of FCI Big Spring on August 16, 2020. Doc. 182. More than 30 days have elapsed since that request was filed, and the government does not challenge the motion on exhaustion grounds. Accordingly, this Motion is properly before the Court.

---

properly before it." *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at * 2 (D. Kan. Mar. 11, 2020); *see also United States v. Joling*, No. 466 F. Supp. 3d 1141, 1145 (D. Or. 2020).

Defendant seeks a reduction in his sentence to time-served or, in the alternative to 62 months' imprisonment. He argues that the previous COVID-19 outbreaks at FCI Big Spring coupled with his medical conditions present extraordinary and compelling reasons for release, especially when considering his participation in programing and clean disciplinary record while in custody, the conditions of his confinement during the pandemic and recent ice storm, and his desires to support his 4-year-old daughter and to care for his ailing parents.

Defendant is 35 years old, with type 2 diabetes, obesity with a Body Mass Index ("BMI") of 40.5 kg/m², high blood pressure, and abnormal liver enzymes. Doc. 182. Additionally, defendant was diagnosed with COVID-19 in November 2020 but was asymptomatic. Doc 190. Ex. 1 at 22, 33.

The Centers for Disease Control ("CDC") recognizes that "[a]dults of any age with . . . conditions" that include type 2 diabetes and severe obesity (BMI of 40 kg/m² or higher) "are at increased risk of severe illness from" COVID-19. Ctrs. For Disease Control & Prevention ("CDC"), *People with Certain Medical Conditions*, COVID-19 (Feb. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 15, 2021). The CDC also recognizes that adults with liver disease[2] or hypertension "*might* be at increased risk for severe illness from" COVID-19. *Id.* (emphasis added).

In September 2020—at the height of the COVID-19 outbreak at FCI Big Spring—there were 502 active inmate infections. *See* U.S. Dep't of Just. Off. of the

---

[2] The Court notes that defendant was not diagnosed with liver disease but recently returned a liver function test that showed abnormal enzyme levels. Doc. 190 Ex. 1 at 17.

Inspector Gen., *Facility-Level BOP COVID-19 Trends*, (Feb. 27, 2021), https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/page_2/ (last visited Mar. 15, 2021) (OIG interactive dashboard with data relating to COVID-19 within BOP). However, when defendant filed his motion on February 25, 2021, there were no reported cases. *See id.* Now, BOP also reports no active, confirmed infections among inmates although there are currently 11 reported infections among staff. *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Mar. 15, 2021). Nevertheless, vaccination efforts are underway across BOP facilities. By the date of the hearing, 139 of the 956 inmates at FCI Big Spring had been fully vaccinated, up from the 73 inmate vaccinations that BOP reported on March 12, 2021, when defendant's reply was filed. *See id.*

Defendant also argues that his rehabilitation efforts throughout his time in custody, and the harsh prison conditions he faced the past year, further support his release. While incarcerated, defendant has had no disciplinary infractions, completed seven courses, and is currently enrolled in a small business course. He has shown a commitment to staying sober through participation in Alcoholics Anonymous and Narcotics Anonymous and was recently classified at a "minimum" security risk level. He endured pandemic conditions, faced isolation and stress during lockdown, and even became infected with COVID-19. Additionally, recent ice storms in Texas exacerbated conditions at FCI Big Spring, where there were multiple days the facility was without power or water.

Defendant proposes a tiered release plan, beginning with a stay at a residential reentry center before returning to his hometown of Fresno, California to care for his parents and assist with farm labor needed to maintain their family home. Defendant has a medical caregiver certification, and because his father suffers from long-term effects of a stroke and recent COVID-19 and pneumonia infections, and his mother is limited by advanced type 2 diabetes, he asserts he provides a unique ability to be of assistance to his family if released. He recently learned that he has a young daughter and had a chance to meet and hold her a few years ago. At the hearing, defendant explained to the Court that he realized he is missing out on his daughter's childhood and wants to be there for her. She, and his parents' health concerns have helped him to realign his values and commit to leading a law-abiding life. With a structured release plan, and the motivation that his family circumstances present for his compliance with the terms of his release, defendant asserts that he does not pose a danger to the community.

On this record, the Court cannot find extraordinary and compelling reasons to reduce defendant's sentence. Despite defendant's risk from his cumulative medical conditions—which each appear well controlled[3]— there is no COVID-19 outbreak at FCI Big Spring at this time, nor has there been one for some time now, and vaccination efforts are underway. Though there is still a chance of a future outbreak,

---

[3] Although in March and May 2020 defendant's hemoglobin A1C was recorded at 6.4, an increased risk category, by January 2021, his A1C was at 5.6, which is considered below the increased risk threshold. Doc. 190 Ex. 1 at 12, 31, 55. Defendant was also reported to have "good" blood pressure with medication, despite his hypertension diagnosis. *Id.* at 12. Additionally, after defendant's blood panel results revealed abnormally high liver enzymes in January 2019, BOP conducted a CT scan of his abdomen, and found no evidence of "hepatic lesions" present. *Id.* at 17.

Page 6 – OPINION AND ORDER

given only a small proportion of inmates are fully vaccinated and the potential for breakthrough infections, that risk is, at this time, very low. By contrast, the seriousness of defendant's offense is great.

Moreover, defendant has a projected release date of January 2031 and has served just under a quarter of his 188-month sentence. He asserts that the 30-year mandatory minimum he faced drove the negotiation in his plea deal, and the empirically based Sentencing Guidelines would have called for a lower sentence than the agreed upon 188 months. He also contends that, in addition to his asserted circumstances, considering his post-offense rehabilitation progress and the harsh conditions he faced the past year from the pandemic and ice storm, a sentence reduction would be sufficient under the sentencing factors. But, given the serious nature and circumstances of defendant's underlying offense—he was trafficking drugs and organized a plan in which his co-defendants exchanged drugs for guns on his behalf, the Court cannot find that his sentence is the result of sentencing disparities. And, based on the same circumstances, the Court finds that reducing defendant's sentence to time-served, or to reduce to 62 months, which would amount to a 126-month reduction in his sentence, would undermine the sentencing factors under 18 U.S.C. § 3553(a).

The Court recognizes that defendant has made valuable use of his time while incarcerated, including by participating in various courses and joining Alcoholics Anonymous and Narcotics Anonymous. The Court also agrees with defendant that earning a "minimum" level custody classification and a spotless disciplinary record

are notable achievements. At the hearing, defendant spoke thoughtfully to the Court and emphasized that, since learning he had a 4-year-old daughter and realizing he may lose his parents, he is a changed man and is committed to his sobriety. The Court is heartened by his commitments and looks forward to supporting defendant's goals and transition upon his release.

Although the rare and extraordinary nature of compassionate release constrains the Court's ruling on the present motion, the Court recommends that BOP transfer defendant to a residential reentry center at the earliest practicable time to allow him the maximum amount of time in community corrections for his transition out of custody and back into the community. *See Sacora v. Thomas*, 628 F.3d 1059, 1061–62 (9th Cir. 2010) (recognizing that 18 U.S.C. §§ 3621(b) and 3624(c) "govern the BOP's authority to place inmates in its custody in RRCs"); 18 U.S.C. § 3621(b)(4)(A)–(B) (authorizing BOP to "designate the place of the prisoner's imprisonment" upon consideration of, in pertinent part, "any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted; or recommending a type of penal or correctional facility as appropriate").

The Court also recognizes that circumstances can change quickly, so this denial is without prejudice. The Court encourages defendant to file a renewed motion if his circumstances change and, especially, if the COVID-19 infection rate begins rising again at FCI Big Spring. The Court will consider any renewed motion on an expedited basis.

## CONCLUSION

Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 182) is DENIED without prejudice and with leave to renew if circumstances change.

IT IS SO ORDERED.

Dated this _18_ day of March 2021.

                           /s/ Ann Aiken

                             Ann Aiken
                    United States District Judge